IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

CALLIE J. CASTEEL                                                                                    PLAINTIFF

VS.                                         CIVIL NO. 05-3015

JO ANNE B. BARNHART, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                                                   DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Callie Casteel, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for disability insurance benefits ("DIB") under the provisions of Title II of the Social Security Act (the "Act").

**Procedural Background:**

The application for DIB now before this court was filed on April 26, 1999, alleging an onset date of October 15, 1998, due to pain resulting from conditions of the lower back and right foot, as well as chronic obstructive pulmonary disorder ("COPD"). (Tr. 45-46, 54). An administrative hearing was held on March 7, 2000. (Tr. 277-300). Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was forty-nine years old and possessed the equivalent of a high school education. (Tr. 15, 60). The record indicates that she had past relevant work experience as a licensed practical nurse ("LPN"). (Tr. 55).

On April 26, 2000, the Administrative Law Judge ("ALJ") issued a written decision finding that plaintiff's impairments were severe. (Tr. 20). However, he concluded that they did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 20). After discrediting plaintiff's subjective allegations, the ALJ concluded that she maintained the residual functional capacity ("RFC") to perform a full range of light work. Utilizing the Medical-

Vocational Guidelines ("the Grids"), the ALJ then concluded that plaintiff could still perform work that existed in significant numbers in the national economy. (Tr. 20).

On February 2, 2005, the Appeals Council declined to review this decision. (Tr. 6-10). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned for report and recommendation. Both parties were afforded the opportunity to file appeal briefs, but plaintiff has chosen not to do so. (Doc. # 6, 7).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines

2

"physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)- (f)(2003), 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2003).

**Discussion:**

Of particular concern to the undersigned is the fact that the ALJ arrived at his determination that there were a substantial number of jobs in the national economy that plaintiff could perform, without consulting a vocational expert. Instead, the ALJ relied solely on the Grids. Generally, if the claimant suffers from non-exertional impairments that limit her ability to perform the full range of work described in one of the specific categories set forth in the guidelines, the ALJ is required to utilize the testimony of a vocational expert. *Groeper v. Sullivan,* 932 F.2d 1234, 1235 n. 1 (8th Cir. 1991). The exception to this general rule is that the ALJ may exclusively rely on the guidelines even

though there are non-exertional impairments if the ALJ finds, and the record supports the finding, that the non-exertional impairments do not significantly diminish the claimant's RFC to perform the full range of activities listed in the guidelines. *Reed v. Sullivan,* 988 F.2d 812, 816 (8th Cir. 1993).

In the present case, the medical evidence reveals as follows. On August 1, 1997, x-rays of plaintiff's lumbar spine revealed degenerative disk disease at the L5-S1 level with osteoarthritic change about the apophyseal joints at the L5 level, as well as osteoarthritic changes in both hips. (Tr. 153).

On February 10, 1999, an examination revealed some pain on the left straight-leg raising test at about sixty degrees. (Tr. 166, 186). As such, she was referred to Dr. Kit Mays for further evaluation. (Tr. 166).

On February 16, 1999, plaintiff indicated that Daypro, which had previously been prescribed, was no longer working. (Tr. 202). She also complained of finger pain, hip pain, and pain in her right foot. Plaintiff stated that she had a constant, throbbing pain at her proximal interphalangeal joints. Dr. George Conner diagnosed her with arthritis and prescribed Relafen. He also directed her to discontinue the DayPro. (Tr. 202).

On February 19, 1999, plaintiff was evaluated by Dr. Mays for complaints of back, left hip, and left lower extremity pain. (Tr. 164). She indicated that her back pain had worsened after her vaginal surgery approximately four years prior. Shortly thereafter, plaintiff stated that she also began to experience hip and leg pain. She was diagnosed with degenerative disc disease ("DDD"), osteoarthritis, facet arthropathy, and sacroiliitis. Plaintiff reported that she was taking Relafen, Verelan, Zestoretic, Synthroid, Extra Strength Tylenol, Prevacid, Mylanta, Tums, and using Dexamethasone cream. Dr. Mays performed a physical examination which revealed depressed deep

tendon reflexes on the right ankle and an antalgic gait to the left. (Tr. 165). Accordingly, Dr. Mays diagnosed plaintiff with multiple level DDD, facet arthropathy, and sacroiliitis. (Tr. 165).

On March 3, 1999, plaintiff was treated by Dr. Mays for continued lower back pain. (Tr. 163). Dr. Mays noted that her bone scan showed an increase in uptake at the L4-L5 levels which was consistent with the degenerative changes demonstrated on the x-rays of her lumbar spine. (Tr. 163, 167). X-rays also showed arthritis at the L4-5 and L5-S1 levels. In addition, some degenerative changes were noted in the hips. Dr. Mays prescribed Darvocet and gave her a second spinal block injection. (Tr. 163).

On April 14, 1999, Dr. Mays indicated had a five to seven percent permanent partial impairment. (Tr. 192). He administered a third spinal block and stated that he would like to give her two to three more blocks before prescribing physical therapy. (Tr. 192).

On April 16, 1999, plaintiff was treated for lower back pain and acid reflux. (Tr. 202). Records indicate that she had undergone three nerve blocks since her last visit. An examination noted tenderness along her lumbar spine. As such, she was diagnosed with reflux and a hiatal hernia. Dr. Conner prescribed Prilosec and Propulsed. (Tr. 202).

On April 29, 1999, plaintiff reported continued back pain. (Tr. 191). An examination revealed positive facet signs, a positive fabere maneuver, and a positive Gaenslen's test. Dr. Mays administered a fourth spinal block and stated he would schedule her for an outpatient cryoblation of the nerves of the Luschka in the affected joints if the spinal block was successful. (Tr. 191, 273).

On May 6, 1999, plaintiff underwent cryoprobe surgery to the L5-S1 region of her lumbosacral spine due to DDD. (Tr. 272). Records indicate that she tolerated the procedure with without complications. (Tr. 272).

On June 29, 1999, plaintiff was diagnosed with chronic bursitis/fascitis/calcaneal spur on the right heel. (Tr. 265). An examination revealed pain with palpation to the medial calcaneal tuberosity, originating from the abductor hallucis muscle belly and the medial calcaneal nerve branch on the right side. Plaintiff indicated that she had undergone surgery to this area in 1980. She received a Marcaine, Lidocaine, and Dexamethasone Sodium Phosphate injection. (Tr. 264). Dr. Haughey also mentioned the possibility of steroid flare and ice therapy in the future. (Tr. 264).

On July 14, 1999, plaintiff sought treatment for a painful heel, stating that it limited her normal activity and ability to wear shoes. (Tr. 235). She indicated that Dr. Lopez had performed heel spur surgery years ago, providing her with no relief. In addition, plaintiff stated that she had undergone multiple unsuccessful injections and had tried physical therapy, immobilization, alternative shoes, alternative padding, arch supports, rest, ice, compression, elevation, contrast bath therapy, and anti-inflammatories. On examination, Dr. Michael Haughey noted pain with palpation of the medial calcaneal tuberosity in the origin of the abductor hallucis muscle belly and course of the medial calcaneal nerve branch on the right side. He also noted a possible subcutaneous mass consistent with a bursal sac on the right side. After diagnosing plaintiff with neuritis of the medial calcaneal nerve branch of the right heel, Dr. Haughey advised plaintiff of her treatment options. She then gave informed consent for surgery. (Tr. 235).

On July 23, 1999, plaintiff underwent an ostectomy of calcaneal spur, neurectomy of the medial calcaneal branch, and fasciotomy to the right heel. (Tr. 228). Following surgery, she was prescribed a low profile walker to be used on her right side. Records indicate that she tolerated the procedure well, with no apparent signs of distress. (Tr. 230). Plaintiff was discharged home with a prescription for Vicodin. (Tr. 263).

On September 7, 1999, plaintiff complained of a sore and painful right heel. (Tr. 258). Dr. Haughey noted a good range of motion in the heel with mild tenderness and a limp. After explaining the normal two to four months healing process to plaintiff, he prescribed a Medrol Dosepak. (Tr. 258).

On September 23, 1999, plaintiff reported partial long-lasting relief and improved function with her last nerve block. (Tr. 270). Dr. Mays noted she was suffering from facet arthropathy at the L3-4, L4-5, and L5-S1 levels, sacroiliitis, and DDD. (Tr. 271). As such, plaintiff underwent another injection. Records indicate that she tolerated the procedure without complications. (Tr. 270).

On October 5, 1999, plaintiff continued to report pain in her right heel. (Tr. 258). Upon palpation, Dr. Haughey noted that her pain was much improved from the last visit. She was, however, demonstrating pain along the most distal plantar incision line and plantar aspect of the right heel. As such, she was injected with Marcaine, Lidocaine, and Dexamethasone Sodium Phosphate. (Tr. 258).

On November 2, 1999, plaintiff indicated that she was doing better since her last Cortisone injection, although she remained sore. (Tr. 257). Dr. Haughey noted decreased pain with palpation of the right heel. According, he directed her to continue with all home exercises and to avoid all medication. Dr. Haughey then asked her to return in one month. (Tr. 257).

On November 30, 1999, plaintiff again complained of pain in the right heel. (Tr. 257). She indicated that it limited her normal activity and ability to wear "shoe gear." Plaintiff stated that it hurt to take the first step each morning and was also problematic after sitting for a prolonged period of time. Dr. Haughey noted pain with palpation plantarly, more so medially and laterally in the right heel. According, plaintiff was given another injection of Marcaine, Lidocaine, and Dexamethasone

Sodium Phosphate into the right heel. Dr. Haughey also prescribed ultrasound and galvanic treatment three times per week for three weeks. (Tr. 257).

On December 28, 1999, plaintiff continued to report significant pain in her right heel, as well as numbness. (Tr. 257). Dr. Haughey noted that he would hold off on all treatment measures in an effort to reconstruct her foot. He then prescribed taping and padding, as well as Lo-Dye L & M with plantar rest straps. (Tr. 257).

On January 11, 2000, plaintiff complained of continued soreness on the outer aspect of the right foot. (Tr. 256). The pain appeared to be well localized to the third interspace on the right foot. No significant Mulder's sign was elicited, but pain was noted with direct pressure. Plaintiff was given an injection of Marcaine, Lidocaine, and Dexamethasone Sodium Phosphate into the third interspace along the EDB muscle belly and mid-tarsal region on the right foot. Dr. Haughey again discussed the possibility of utilizing steroid flares and ice therapy. (Tr. 256).

As the evidence reveals, plaintiff was suffering from lower back, hip, and right heel pain. In spite of plaintiff's numerous complaints and the various medications prescribed to treat her symptoms, the ALJ determined that plaintiff did not suffer from any non-exertional impairments that would effect her ability to perform a full range of light work and utilized the Grids to determine that she could perform work that exists in significant numbers in the national economy. However, the evidence clearly indicates that plaintiff was suffering from back and heel pain, both nonexertional impairments. In fact, plaintiff reported that her heel pain interfered with her ability to perform daily activities and wear shoes. As such, it is possible that this pain might also limit her ability to stand and/or walk for six hours during an eight-hour workday, stoop, kneel, crouch, crawl, climb, and balance.

8

Because substantial evidence of record supports the existence of non-exertional impairments, it was incumbent on the ALJ to call a vocational expert to determine whether there were jobs in the national economy that plaintiff could perform, and if so, the extent to which that base may be diminished by her impairments. Accordingly, we believe that the omission of testimony from a vocational expert leaves us with an undeveloped and inconsistent record, and provides us no alternative but to remand for further proceedings. *See Draper v. Barnhart*, 425 F.3d 1127, 1132 (8th Cir. 2005).

**Conclusion:**

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this day 14th of September 2006.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE